# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERYL L. CHERRY, | ) |
| Plaintiff, | ) |
| | ) Case No. 14-CV-401-JED-FHM |
| v. | ) |
| STATE OF OKLAHOMA, ex rel. DEPARTMENT OF HUMAN SERVICES, et al., | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

### I.  Plaintiff's Allegations

In this employment discrimination action, plaintiff asserts several claims against the State of Oklahoma, ex rel. Department of Human Services (DHS), its Director, Edward Lake, and Jina Vietta, who was a supervisor of plaintiff at DHS. DHS and Lake move to dismiss (Doc. 8, 9).[1] The facts set forth herein are alleged in the plaintiff's Petition and are taken as true for purposes of this order.

Plaintiff, who is an African American woman, began her employment with DHS in 1990 as a Clerk II. She was subsequently promoted to Adult Protective Services Specialist, and later gained supervisory duties over subordinate employees. Her decisions and actions were micromanaged by her supervisor, defendant Jina Vietta. In October 2012, based on allegations that plaintiff had violated policies regarding guardianships, Vietta demoted plaintiff from her supervisory position, and plaintiff was escorted to her desk. Plaintiff alleges that other supervisors, who were Caucasian, committed the same policy violations as plaintiff, but they were not demoted

---

[1]  Jina Vietta was apparently never served, and she has not appeared or filed any response to plaintiff's pleading.

or escorted to their desks. Plaintiff also observed Vietta make untruthful allegations against other African American employees, who were held to a higher standard than Caucasian employees. At some point after the demotion, plaintiff was terminated. "Plaintiff believes that the hostile environment, disparate treatment, demotion and the termination of her employment was based upon her race." (Doc. 2-2 at 3).

Based on the foregoing factual allegations, plaintiff asserts several claims against the defendants: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) racial discrimination under 42 U.S.C. § 1981; (3) retaliation in violation of Title VII; (4) hostile work environment under Title VII; (5) intentional infliction of emotional distress (IIED); and (6) violation of plaintiff's equal protection rights under the Fourteenth Amendment. Defendants DHS and Lake move to dismiss.

## II. Dismissal Standards

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether plaintiff has stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard requires "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555-56, 570 (citations omitted). *Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). The Court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to claimant. *See Twombly*, 550 U.S. at 555.

The dismissal standard does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded [pleading] may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

### III. Director Lake

Director Lake is sued in his individual capacity. All six of plaintiff's claims are asserted against him and will be addressed below.

#### A. First, Third, and Fourth Claims: Title VII

Lake moves to dismiss plaintiff's First, Third, and Fourth Claims against him in his individual capacity under Title VII, because individual capacity suits under Title VII are inappropriate. (Doc. 9 at 6). In response, plaintiff "agrees to dismiss her First, Third, and Fourth Claims for Relief under Title VII against Defendant Lake." (Doc. 13 at 1). Accordingly, Lake's motion to dismiss these claims is granted, and those claims are dismissed.

#### B. Fifth Claim: IIED

Under Oklahoma law, IIED claims are governed by the narrow standards set forth in the Restatement Second of Torts, § 46. *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 149 (Okla.

3

1998). In *Breeden v. League Servs. Corp.*, 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 1376 (quoting Restatement (Second) § 46, cmt. d).

To establish a claim, the plaintiff must show that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *See Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (quoting *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)). The trial court must assume a "gatekeeper role" and make an initial determination that the alleged conduct "may reasonably be regarded as sufficiently extreme and outrageous" to maintain a claim for intentional infliction of emotional distress. *Trentadue v. United States*, 397 F.3d 840, 856 n.7 (10th Cir. 2005); *see also Gaylord,* 958 P.2d at 149.

Plaintiff asserts that her allegations that she was demoted and escorted to her desk by a Caucasian supervisor to humiliate her, that she was subjected to racial discrimination, and that she heard her supervisor making untruthful allegations against other African American employees sufficiently state a claim for IIED against Director Lake. The Court disagrees. Notably, plaintiff has not included a single specific allegation of any particular conduct *by Director Lake toward plaintiff*. The referenced allegations relate to Vietta, not Lake. In any event, the conduct alleged is not "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

4

as atrocious, and utterly intolerable in a civilized community." *See Breeden*, 575 P.2d at 1376. Oklahoma courts have routinely held that Title VII and other employment-related claims generally do not rise to the level of outrageous conduct necessary to support a claim of intentional infliction of emotional distress. *Daniels v. C.L. Frates & Co.*, 641 F. Supp. 2d 1214, 1218 (W.D. Okla. 2009); *see also Miner v. Mid-America Door Co.*, 68 P.3d 212 (Okla. Civ. App. 2003) (claim of intentional infliction of emotional distress was not established despite allegations of sexually explicit verbal abuse and physically threatening conduct by a supervisor); *Eddy v. Brown*, 715 P.2d 74 (Okla. 1986) (allegations of ridicule by supervisor and foreman did not amount to sufficiently outrageous conduct); *Anderson v. Oklahoma Temp. Servs., Inc*, 925 P.2d 574 (Okla. Civ. App. 1996) (six events including lewd remarks about the plaintiff by her supervisor and embarrassing her by discussing her faults with coworkers were insufficiently outrageous); *Mirzaie v. Smith cogeneration, Inc.,* 962 P.2d 678 (Okla. Civ. App. 1998) (allegations that employer made derogatory sexual comments about the plaintiff's fiancée, refused to allow plaintiff a day off of work to be with his wife and newborn son in the hospital, and called plaintiff in the middle of the night, browbeating the plaintiff for hours and requiring him to do unnecessary work, were not sufficiently outrageous to maintain a claim for intentional infliction of emotional distress).

Similarly, the Tenth Circuit, applying Wyoming law (which, like Oklahoma law, is based on the Restatement (Second) of Torts § 46), has rejected claims of IIED that were premised upon allegations of racial harassment and derogatory remarks based on race or ethnicity. *See Herrera v. Lufkin Ind., Inc.*, 474 F.3d 675, 687 (10th Cir. 2007). Based on the foregoing, the plaintiff's IIED claim against Lake is dismissed. The allegations of the plaintiff's Petition – her claim of disparate treatment and being walked to her desk – do not state a plausible IIED claim under Oklahoma law.

### C. Second Claim: 42 U.S.C. § 1981

Lake moves to dismiss plaintiff's § 1981 claim against him and argues that her allegations are insufficiently specific as to actions by Lake that constitute a violation of § 1981. The Court agrees. "Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Reynolds v. School Dist. No. 1 of Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981). A prima facie case of discrimination under § 1981 will ultimately require facts that show: (1) the plaintiff is a member of a protected class; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).

Plaintiff's allegations plainly support the first element, as she alleges that she is African American and is thus a member of a protected class. The second element is problematic. The only factual allegation against Lake is that he "is the Director of DHS . . . and is responsible for adopting and implementing policies that ensure against racial discrimination." (Doc. 2-2 at ¶ 10). In separate allegations (under her separate § 1983 claim), plaintiff alleges that Lake was aware that her constitutional rights to equal protection under the law were being violated, that she suffered disparate discipline, and that Lake ratified discrimination against plaintiff. (*Id.* at ¶¶ 31, 32). Those allegations are conclusory and formulaic, rather than setting forth facts that plausibly state a claim under § 1981. *See Twombly*, 550 U.S. at 555-56, 570 (pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," must provide "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level."). *Id.* at 555-56, 570.

### D. Sixth Claim: 42 U.S.C. § 1983 / Equal Protection

The Equal Protection Clause of the Fourteenth Amendment guarantees that "no state[] shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause prevents "governmental decision makers from treating differently persons who are in all relevant respects alike." *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (internal quotation marks and citations omitted). "In disparate treatment discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007). Because the Petition does not state a claim against Lake under Title VII or § 1981, it likewise does not state an equal protection claim against Lake under § 1983. *See id.* Plaintiff adds virtually nothing in her response to the dismissal motion and alleges no additional facts which, if permitted to amend, would state any plausible equal protection claim against Lake. Accordingly, Lake's motion to dismiss the § 1983 claim against him individually is granted.

### E. Qualified Immunity

Lake further contends that he is entitled to qualified immunity on plaintiff's claims under §§ 1981 and 1983. Where qualified immunity is raised at the dismissal stage, the Court must accept all well-pleaded allegations as true and view them in a light most favorable to the plaintiffs. *See Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). "To survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show – when taken as true – the defendant plausibly violated [plaintiff's] constitutional rights, which were clearly established at the time of the violation." *Id.* If the plaintiff fails to satisfy either part of the inquiry, the defendant is entitled to qualified immunity. *See Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). Because plaintiff has not alleged facts that state any plausible claims against

Lake for a violation of plaintiff's federal rights under §§ 1981 or 1983, Lake is entitled to qualified immunity on those claims under the first component of the qualified immunity analysis.

## IV. DHS

### A. First and Second Claims: Title VII and § 1981

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A prima facie case of employment discrimination is established by facts showing that the plaintiff (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position at issue, and (4) was treated less favorably than others not in the protected class. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). At the pleading stage, plaintiff is not required to establish a prima facie case in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See id.* However, analyzing the allegations of the plaintiff's pleading in light of the elements of each alleged cause of action "help[s] to determine whether [the plaintiff] has set forth a plausible claim." *Id.* Plaintiff's pleading contains sufficient factual allegations to state a plausible claim for employment discrimination under Title VII. In short, she alleges that she is African American, which satisfies the first element of a prima facie case. She alleges that she was demoted, and her employment was subsequently terminated, which constitutes an adverse employment action and thus satisfies the second element. She asserts that she had been employed at DHS from 1990 to 2012, with increasingly progressive responsibilities, and that she consistently performed quality work, which is sufficient to satisfy the third element.

Unlike the conclusory and formulaic allegations against defendant Lake, the plaintiff's allegations with respect to another DHS supervisor do state a plausible claim that plaintiff was treated disparately based on race, which are sufficient to satisfy the fourth element at the pleading stage. For example, plaintiff alleges that she was demoted based upon alleged violations of policy, while Caucasian employees were not demoted for similar conduct. She further alleges that her supervisor held African American employees to a higher standard than other employees who were Caucasian, and that DHS intentionally humiliated plaintiff by escorting her back to her desk, while Caucasian employees were not similarly treated under the same circumstances. While these allegations are not particularly strong, at the pleading stage, the Court must accept them as true. They sufficiently allege a plausible claim against DHS for racial discrimination under Title VII.

Because the same standards govern the § 1981 claim at the pleading stage, plaintiff has likewise stated a claim against DHS under § 1981.

### B.     Third Claim: Retaliation

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice. . . ." *See* 42 U.S.C. § 2000e-3(a). Although the statute does not refer to such discrimination as "retaliation," the courts have so named claims under § 2000e-3(a). A prima facie showing of retaliation requires facts that show (1) that plaintiff engaged in a protected activity; (2) she suffered a material adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015); *see also Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

The DHS argues that plaintiff's retaliation claim should be dismissed for failure to allege any facts showing that plaintiff engaged in "protected activity." (Doc. 8 at 8). The Court agrees. Plaintiff's Petition does not allege that she engaged in any protected activity before she was demoted or terminated. In her response, plaintiff asserts that she believes her demotion occurred in retaliation for previous complaints regarding discriminatory practices. Although she does not identify any *facts* that are available to her that would support her retaliation claim, she "requests leave by the court to amend her Petition to allege more specific facts with respect to her retaliation claim." (Doc. 14 at 6-7). She will be permitted leave to amend that claim.

C. **Fourth Claim: Hostile Work Environment under Title VII**

In response to the DHS's motion to dismiss the hostile work environment claim, plaintiff points to her allegations that she observed a supervisor making false allegations against African American employees, plaintiff was physically escorted "back to her desk following a demotion that was not shared by Caucasian employees," and she was ultimately terminated. (Doc. 14 at 7). She alleges that those allegations are "a sufficient description of the circumstances under which [she] asserts a claim for hostile work environment." (*Id.*).

The words "hostile work environment" are a mere legal conclusion. *See Moya v. Schollenbarger*, 465 F.3d 444, 457 (10th Cir. 2006). At the pleading stage, the court's focus must be on the "alleged facts supporting those words." *Id.* The question is whether the plaintiff's allegations of fact, taken as true, state a plausible claim for a racially hostile work environment. *See id.* Such a claim requires fact allegations "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of [her] race." *Herrera*, 474 F.3d at 680; *see also Chavez v. New*

*Mexico*, 397 F.3d 826, 831-32 (10th Cir. 2005) (requiring allegations that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus").

Plaintiff's Petition does not include any allegations of fact that are sufficient to plausibly state such a claim of racially hostile work environment. Plaintiff indicates that she may be able to provide additional allegations supporting such a claim, if permitted leave to amend. (Doc. 14 at 7). She will be permitted leave to amend that claim against DHS.

### D. Fifth Claim: IIED

For the same reasons the Court has determined that plaintiff's allegations do not state a plausible claim for IIED against Lake, the IIED claim against DHS must also be dismissed. The plaintiff's factual allegations do not suffice to state a claim for IIED.

### V. Conclusion

For the foregoing reasons, DHS's Motion to Dismiss (Doc. 8) is **granted in part** (as to the Third, Fourth, and Fifth Claims against DHS, which are dismissed) and **denied in part** (as to the First and Second Claims against DHS). Director Lake's Motion to Dismiss (Doc. 9) is **granted**, and all claims against him are hereby **dismissed**.

Plaintiff has requested leave to amend her claims of retaliation and hostile work environment against DHS. Any amendment of those two claims against the DHS shall be filed within **10 days** of the entry of this order. However, in order to survive dismissal of any amended claims against DHS for retaliation and hostile work environment, plaintiff must provide more specific allegations than she has only vaguely referenced in her response.

SO ORDERED this 19th day of September, 2017

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE